BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PT JAYA SAMUNDRA KARUNIA SHIPPING,<br><br>                              Plaintiff,<br><br>       - against -<br><br>USL SHIPPING FZE a/k/a USL SHIPPING FZE DUBAI, USL SHIPPIN FZE DUBAI, USL FZE or UNITED SHIPPERS LIMITED,<br><br>                              Defendant. | 08 CV 1891 (JGK) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL
RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND
<u>MARITIME CLAIMS FOR COUNTERSECURITY</u>**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

900200.00001/6631825v.1

## INTRODUCTION

Defendant USL SHIPPING FZE a/k/a USL SHIPPING FZE DUBAI, USL SHIPPIN FZE DUBAI, USL FZE or UNITED SHIPPERS LIMITED ("USL") respectfully submits this memorandum of law in support of its motion pursuant to Supplemental Rule E of the Supplemental Rules of F. R. Civ. P. for Certain Admiralty And Maritime Claims ("Supplemental Rules") for counter-security.

## THE BASIC FACTS

The facts relating to this application are set out in the affidavit of Jeremy J.O. Harwood dated April 15, 2008.

### A. The Complaint

Plaintiff obtained a Rule B attachment order dated February 29, 2008 (the "Attachment Order") pursuant to a verified complaint dated February 26, 2008 (the "Complaint"). It has attached a total of $447,040 (the "Claim"). The Claim is subject to London arbitration but Plaintiff PT JAYA SAMUNDRA KARUNIA SHIPPING ("JAYA") has not yet served any claim submissions in respect of its claim.

### B. The Counter-Claim

As stated in USL's verified answer, it asserts a counter-claim for advance hire paid in the sum of $250,747 but not earned by the Vessel or JAYA. JAYA has simply refused to return the sum claiming a unilateral right to offset the sum against its alleged damages for a breach that is disputed.

USL is entitled to immediate payment of its Advance Hire plus interest thereon and its "costs."

## ARGUMENT

### POINT I

**PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO VACATE THE ATTACHMENTS**

An order of maritime attachment and garnishment pursuant to Rule B is typically issued upon a minimal prima facie showing, usually made ex parte. See, e.g., Seaplus Line Co. v. Bulkhandling Handymax, 409 F. Supp.2d 316 (S.D.N.Y. 2005). Once property has been restrained:

> Any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall **be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

Rule E(4)(f) (emphasis supplied).

The Second Circuit has found that Rule E(4)(f) is clear and the burden is on the plaintiff to show the attachment "was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).[1] Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends entirely upon the issues in controversy. Salazar v. THE ATLANTIC SUN, 881 F.2d 73, 79 (3d Cir. 1989).

---

[1] To the extent the attachment is to be vacated on an equitable ground, however, the burden is on the defendant to establish any equitable grounds for vacatur. Id.

Accordingly, the burden is now on Plaintiff to establish why the attachments should be maintained.

### POINT II

### USL IS ENTITLED TO COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E

Supplemental Rule E(7) states in material part:

> . . . a plaintiff for whose benefit such security has been given <u>must give security for damages demanded in the counterclaim unless the court for cause shown</u>, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise direct. (emphasis added)

It is undisputed that "costs" under English law include "attorney's fees" and are awarded to the prevailing party. Complaint ¶ 14, Answer and Counter-claim, ¶ 12. USL, in its answer and counter-claim, filed with this application, asserts a counter-claim for Advance Hire, with interest and "costs" in the same sum, $250,000, as attached by Jaya.

1.  **Historical Background To Counter-Security**

In <u>Washington Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.</u>, 263 U.S. 629, 638-39 (1924), the Supreme Court stated that the purpose of Admiralty Rule 50 (the forerunner of Rule E(7)) was "to place the parties on an equality as regards security."

The leading case on Rule E(7) in the Second Circuit is <u>Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.</u>, 56 F.3d 394 (2d Cir. 1995). After first quoting the text of the Rule, the Second Circuit stated (emphasis added):

3

> Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the *trial court possesses broad discretion* in deciding whether to order countersecurity under such conditions. . . .
>
> In exercising this discretion, the court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is "'to place the parties on an equality as regards security,'" . . . which usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded in rem or quasi in rem in an independent suit. On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. . . .

Id. at 399-400 (citations omitted). The Second Circuit continued:

> In balancing these policies, the trial court "is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection."

Id. at 400 (quoting Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 404 (5th Cir. 1987)).

As noted by the Second Circuit, the discretion afforded the district court should usually be exercised in favor of granting countersecurity "especially when the counterclaimant could have proceeded in rem or quasi in rem." The fact that the Second Circuit qualified that class of cases with "especially" makes it clear, however, that it is not necessary that the "counterclaim" support such an independent *in rem* or *quasi in rem* suit; a district court's discretion includes other types of claims as well. Otherwise, the

Second Circuit would have stated that the class of claims for which countersecurity could be ordered included such claims and no others. District courts have noted and made use of the "broad discretion" granted them under Rule E(7).

See also North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist LEXIS 87648, *6 (S.D.N.Y. November 29, 2007) (Stein, J.) ("Nothing in the Second Circuit's decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)] suggests that a motion for countersecurity pursuant to Rule E(7) need only meet the *prima facie* requirements of an admiralty claim pursuant to *Rule B*. Rather, motions for countersecurity remain—even post-Aqua Stoli—subject to the 'broad discretion' of the Court.").

Accordingly, Judge Leisure's decision strongly suggests that a claim for "costs" under English law is a claim, and an independent claim, for which countersecurity under Rule E(7) may be granted; it is simply not a "maritime claim" which satisfies Rule B.

In Aifos Trade S.A. v. Midgulf Int'l Ltd., 06 Civ. 203 (SHS) (S.D.N.Y. 2006) the plaintiff had obtained security by maritime attachment. The defendant asserted a counterclaim in the principal amount of $34,212.58. It asked for countersecurity in that amount plus $30,000 in arbitrators' fees and expenses and $50,000 in attorneys' fees and expenses for a total of $120,905. Judge Stein held that this amount was "excessive because it appears to incorporate the expense of not only prosecuting its counterclaim, but also of defending against the original complaint, a purpose that is beyond the scope of Rule E(7) . . . which provides that countersecurity is to cover only the 'damages demanded in the counterclaim.'" Judge Stein reduced the amount of countersecurity to

5

900200.00001/6631825v.1

$51,000, an amount which included "the full amount of the counterclaim plus interest as well as attorney's fees and arbitrators' costs of $10,000, which is a reasonable estimate of the cost of prosecuting the counterclaim."

Judge Chin, however, reached the <u>opposite</u> conclusion on the same facts in <u>Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd.</u>, 2007 U.S. Dist LEXIS 79685 (S.D.N.Y. October 18, 2007). The plaintiff had a claim for $1,605,367, including "costs" in the amount of $300,000, and obtained security for its claims in London in that amount through a Rule B attachment here. Defendant then asserted a counterclaim in the amount of $92,289.35 and asked for countersecurity in that amount plus $300,000 in costs. Plaintiff contended that the defendant was entitled only to costs associated with the counterclaim, not for defending the plaintiff's claim. Defendant countered that to prevail on its counterclaim it had to defeat the original claim. Noting that the case law was "limited," Judge Chin directed the plaintiff to provide countersecurity in the <u>full</u> amount of $300,000.

In reaching this conclusion, Judge Chin stated that Judge Scheindlin's decision in <u>Ulisses Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318 (S.D.N.Y. 2006) was "the most relevant."[2] <u>Fednav</u>, 2007 U.S. Dist LEXIS 79685 at *3. There, the plaintiff had asserted a claim for wrongful attachment. The defendant agreed, and Judge

---

[2] *Ulisses* was decided prior to *Aqua Stoli*, 460 F.3d 434 (2d Cir. 2006), and the Second Circuit rejected the "needs" test Judge Scheindlin applied with respect to the Rule B attachment, 460 F.3d at 446 & n.8, as noted by Judge Wood in the same context in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). Neither the Second Circuit nor Judge Wood addressed the holding in *Ulisses* allowing countersecurity for costs.

Scheindlin found, that such a counterclaim did not arise from the same occurrence or transaction which was the subject of litigation between the parties in London. 415 F.Supp. 2d at 329. Nevertheless, she found that the defendant's claim for "costs" (in the amount of £756,526.15) in defending itself against plaintiff's claim in London were "inextricably intertwined with the original transaction that is the subject of the London Litigation." Id.

Where, as here, the merits are being decided in a jurisdiction where "costs follow the event," and where, as here, Plaintiff has been given security which include its costs, the better rule, we submit, is the rule adopted by Judge Scheindlin, that countersecurity for costs is appropriate because the claim for costs is "inextricably intertwined with the original transaction that is the subject of the [English proceeding]."

Plaintiff has obtained security from Defendant. The well-recognized goal of Supplemental Rule E(7) is to place the parties on equal footing as regards security and thereby afford reciprocal protection while the parties arbitrate. USL is entitled to counter-security as asserted in its Answer and Counter-Claim, which arise by way of the same "transaction or occurrence."


## CONCLUSION

WHEREFORE, Defendant respectfully requests that Plaintiff be ordered, pursuant to Supplemental Rule E(7) to post a bond or other security satisfactory to the Court in the sum of $560,926 and for such other relief as is fair and equitable and as requested herein.

Date:   New York, New York
        April 15, 2008

                                        Respectfully submitted,

                                        BLANK ROME LLP

                                        By: _____
                                        Jeremy J.O. Harwood
                                        405 Lexington Avenue
                                        New York, New York 10174
                                        (212) 885-5000
                                        *Attorneys for Defendant*